IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHRIS PETERSON and BECKY
RODD, on their behalf and on behalf of
all others similarly situated,

     Plaintiffs,

v.

                                               Civil Action No. 1:24-cv-110
                                               HONORABLE THOMAS KLEEH

TOM BLOOM, JEFFREY ARNETT,
and SEAN SIKORA,
MONONGALIA COUNTY COMMISSIONERS,
 in their official capacities, and

TODD FORBES,
MONONGALIA COUNTY SHERIFF,
in his official capacity,

     Defendants.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

I. Introduction

Count I of the verified complaint alleges that Monongalia County's Ordinance 2023-1, as enacted and implemented, violates First Amendment rights of free speech and free expression of pedestrians soliciting donations or interacting with passing motorists, and the First Amendment rights of vehicle occupants who interact with or donate funds to pedestrians.

Plaintiffs can prove that the Ordinance was enacted and implemented to target panhandling, a form of expression which the County disfavors, despite pretextual claims it is a "safety" law.[1] While plaintiffs have sufficient facts to obtain summary judgment finding the

---

[1] *See, e.g.,* Transcript of Deposition of Defendant Commissioner Tom Bloom (Bloom Tr.) Exhibit 1 to this motion, p. 165, ln. 21- p. 160, ln. 9; p. 201, lns. 15 – 22 (explaining he removed the words "panhandling/solicitation" because he decided laws prohibiting panhandling and solicitation were approved when "they dealt with safety, so I modified what my start was." *Cf. City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 596 U.S. 61, 74 (2022) (cont.)

Ordinance content based, they understand a court might be reluctant to resolve issues of intent and pretext on summary judgment.

Plaintiffs seek partial summary judgment only as to their intermediate scrutiny claim. Plaintiffs do not concede that the Ordinance is content-neutral, intending to present the content-based/strict scrutiny claim at trial if required. However, plaintiffs' motion for partial summary judgment proves that if the Ordinance were content-neutral, it still fails the intermediate scrutiny standard.

## II.     Facts

In early 2023, Defendant County Commissioner Tom Bloom began publicly advocating for adoption of a county-uniform panhandling/solicitation ban.[2] In addressing the Morgantown City Council on April 4, 2023, Bloom explained his goal as follows:

> *As you are quite aware the soliciting and panhandling problem has become a serious concern in the county, in the city, and at WVU.* It is becoming a safety problem in unincorporated areas of the county, on WVU campus, and in the city of Morgantown. Not only is it unsafe for the panhandler in the road, but there have been several accidents because cars are suddenly stopping at the green light to give a donation only to get rearended by another car. We have also had numerous close calls. *The County Commissioners tonight are requesting a meeting with representatives from the city, along with WVU officials, to develop an ordinance to regulate soliciting and panhandling that is uniform for all governmental bodies.*[3]

---

(regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a "function or purpose" proxy that achieves the same result). *Similarly, see* transcript of deposition of Sheriff Todd Forbes (Forbes Tr.), filed as Exhibit 2 to this motion, p. 66, ln. 7 – p. 67, ln. 8 (Ordinance makes panhandling and other types of solicitation illegal); p. 68, lns. 10 – 12 (not aware Ordinance has been enforced against any person *not* engaged in panhandling.)

[2] Bloom Tr. p. 48, ln. 17 – p. 49, ln. 20.

[3] Emphasis added. *See* transcription of Commissioner Bloom's address to Morgantown City Council on April 4, 2023, filed as Exhibit 3, as prepared from the City Council YouTube video recording of that meeting as archived at Morgantown's YouTube page (link in Exhibit).

Bloom thereafter solicited local governments and WVU officials to meet on May 25, 2023 to discuss adoption of such an ordinance. Bloom testified the purpose of the meeting was to discuss the draft panhandling ordinance he had circulated.[4] Bloom was the sole author of that draft ordinance.[5] It was titled "Ordinance Regulating Soliciting/Panhandling" and stated in part:

> The Monongalia County Commission hereby finds that unauthorized soliciting/panhandling along roadways situated within the unincorporated areas of Monongalia County constitutes a public nuisance. . .

Bloom's ordinance was not intended to regulate any activities other than soliciting and panhandling.[6]

At the July 12, 2023 Commissioner meeting, Bloom introduced a revised ordinance, now titled "Regulating Pedestrian and Vehicle Safety." Bloom described the revised Ordinance as "not restricting panhandling, only the area where panhandling was. . . "[7] Bloom agreed the Ordinance arose from complaints he received about individuals standing in concrete medians near stoplights asking motorists for money.[8] He explained as to the revision that "the key being that we were going after the middle of the road."[9]

As enacted on October 23, 2023, the Monongalia County Pedestrian and Vehicle Ordinance made it unlawful in "any Area of Concern" :

---

[4] Bloom Tr., p. 118, ln. 12 – p. 119, ln. 17. That initial proposal appears in the record as ECF # 1-1.

[5] Bloom Tr. p. 122, lns. 9-22.

[6] Bloom Tr. p. 124, lns. 1-4.

[7] Bloom Tr., p. 165, ln. 21- p. 160, ln. 9.

[8] Bloom Tr. p. 201, lns. 15 – 22.

[9] Bloom Tr. p. 198, ln. 10 – 18.

A. For any person within a road or highway to reach out to interact with or exchange items with any occupant of a vehicle entering on, or departing a roadway;

B. For any occupant of a vehicle entering on, or departing a roadway to reach out of or attempt to reach out of his vehicle to interact with or exchange items with another occupant of a vehicle or any person within a road or highway;

C. For any person to stand, sit, or otherwise physically remain within the roadway for any reason apart from the lawful crossing of a road or highway.

D. For any person to stand, sit, or otherwise remain in the median of a road or highway where the median is not wider than 10 feet for any reason apart from the lawful crossing of a road or highway.

E. For any person to stand, sit, or otherwise remain in the median, neutral ground, shoulder, or other part of the road or highway where the intersection has one roadway with an annual average daily traffic volume of 4,000 or more vehicles per through lane.

F. For any person to stand, sit, or otherwise remain in the median, neutral ground, shoulder, or other part of the road or highway where the road highway has a speed limit exceeding 35 miles an hour for any reason apart from the lawful crossing of the road or highway.

G. It shall be unlawful for any person to stand, sit, or otherwise remain in the median, neutral ground, shoulder, or other part of the highway at night and where the roadway has poor or no lighting for any reason apart from the lawful crossing of a highway.

H. It shall be unlawful for any person to stand, sit, or otherwise remain in the median, neutral ground, shoulder, or other part of the highway during inclement weather conditions that limit the visibility of pedestrians and occupants of vehicles on the highway for any reason apart from the lawful crossing of a highway.

I. It shall be unlawful for any person to stand, sit, or otherwise remain in the median, neutral ground, shoulder, or other part of the highway where the intersection is regularly used to dispatch emergency vehicles for any reason apart from the lawful crossing of a highway.

J. It shall be unlawful for any person to stand, sit, or otherwise remain in the median, neutral ground, shoulder, or other part of the highway where the highway is under construction or repair for any reason apart from the lawful crossing of a highway.[10]

---

[10] *See* Monongalia County Ordinance 2023-1, produced in discovery as MCC 1024-1029, appended as Exhibit 4 (hereafter Ordinance), Article V.

The Ordinance defines "road" and "highway" to include the entire area from sidewalk to sidewalk. *See* Ordinance, Article III, Section D. Bloom claims the Ordinance only regulates activities "in the middle of the road."[11]

As to the roads, highways, and intersections the Ordinance covers, Bloom conceded these are all state-regulated roads[12]: "[t]here are no county roads. . . . .There's only state roads, or city roads, or orphan roads. The county owns no roads."[13] The Commission did not consider enacting a law less restrictive of activities than the Ordinance because the county is not allowed to exercise control over state roads.[14] Bloom also agreed the Commissioners never considered adopting a more limited Ordinance just prohibiting persons from being in the middle of the road.[15] Both Defendant Commissioner Bloom and Defendant Sheriff Forbes agreed that deputies actually have authority to order people standing in the middle of the road to move, even before the Ordinance was passed, and even where the Ordinance does not apply.[16]

---

[11] Bloom Tr. p. 52, lns. 2-4. *See also* Bloom Tr. p. 64, lns. 11-22:
> Q. So would it be fair to say that that's a    prohibition on the person standing on the road or by the road?
> A. No, not by the road. In the middle --
> Q. Okay.
> A. -- of the road.
> Q. Okay.
> A. We made it very clear on that. . . . The person can stand on the side of the road, can stand on the sidewalk, but they can't stand in the middle of the road.

[12] Bloom Tr., p. 205, lns. 2-11.

[13] Bloom Tr. p. 203, lns. 1-7.

[14] Bloom Tr. p. 229, ln. 23 – p. 230, ln. 5; p. 252, lns. 8 – 16; p. 234, lns. 6 -12 (not aware of any possible alternatives less restrictive than Ordinance because "we don't control the roads. We don't have roads." )

[15] Bloom Tr. p. 114, lns. 21-24.

[16] Bloom Tr., p. 59, ln. 4 – p. 60, ln. 10;  Forbes Tr. p. 77, ln. 12 – p. 78, ln. 12.

The enacted Ordinance required designation of the "Areas of Concern" to which it would apply. These Areas of Concern were not designated until January 8, 2024.[17]  There are no written records, meeting minutes, or Commission resolutions establishing the Areas of Concern or explaining the reasons these Areas and not others were selected. Bloom admitted the Commission had no data indicating a higher risk to safety existed in the Areas designated than in others not so designated.[18] The Commission did not have any information or input from law enforcement about the need for an ordinance, nor did it seek or obtain records on pedestrian-vehicle or vehicle-vehicle accidents relating to pedestrians.[19] A December 2023 FOIA request to the Commission sought:

> 2. All writings (including written evidence, data, reports, compilations, studies, investigation results or analyses, and any other written information) submitted to or reviewed by the Commission or one or more of its members in considering or determining the need for, the appropriate scope of, and/or substance or terms of the Monongalia County Commission Pedestrian and Vehicle Safety Ordinance as enacted on October 25, 2023.

The Commission's response identified only a 2019 traffic volume report from the Morgantown Monongalia Metropolitan Planning Organization and a 2022 ordinance enacted by Henrico County, Virginia.[20] Bloom explained the Areas of Concern were selected because each had (1) a high traffic volume as shown in a 2019 MMCPO report; and (2) an intersection

---

[17] *See* Defendants' Answer, ECF # 10, paragraph 123; designation of "Areas of Concern" attached as Exhibit 5.

[18] Bloom Tr. p. 247, lns. 13 – 19.

[19] Bloom Tr. p. 247, ln. 13 – p. 248, ln. 8; Forbes Tr. p. 28, lns. 3 -10) (despite discovery response inquiry, not aware of any information requested from or provided to Commission).

[20] *See* December 19, 2023 FOIA request, and January 5, 2024 response, attached as Exhibit 6.

offering places a pedestrian might stand.[21]

Sheriff Todd Forbes conceded the road shoulders, medians, crosswalks, and neutral ground, etc. covered by the Ordinance's prohibitions are "public fora."[22] Defendant Commissioner Bloom said he did not understand the question.[23] Forbes testified the Ordinance makes panhandling illegal if conducted in one of the prohibited locations, or while standing in harm's way in the middle of the road.[24] When asked to list any activities beside panhandling which the Ordinance was intended to prohibit, Forbes identified only other solicitations of funds from passing motorist, such as by volunteer fire departments, sport teams, and cheerleader car washes.[25] Forbes denied knowledge of any warning or citation issued under the Ordinance to someone who was not panhandling, or to any vehicle occupant.[26]

Sheriff Forbes testified he knew of three citations issued by deputies for violation of the Ordinance, all to plaintiff Peterson.[27] FOIA responses received from the Sheriff 's department before suit documented other citations and written warnings never produced in discovery.[28]

---

[21] Bloom Tr., p. 233, ln. 5- p. 234, ln. 3.

[22] Forbes Tr. p. 35, ln. 15 – p. 26, ln. 18.

[23] Bloom Tr. p. 71, ln. 16 – p. 72, ln. 8.

[24] Forbes Tr., p. 66, lns. 7 – 17.

[25] Forbes Tr., p. 66, ln. 18 – p. 67, ln. 8. *See also* July 5, 2023 email from Commissioner Bloom to Bill Austin, attached as Exhibit 7: proposed ordinance "would stop all fund raising. Even volunteer fire department".

[26] Forbes Tr. p. 74, lns. 7 -21.

[27] Forbes Tr. p. 48, ln. 18 – p. 49, ln. 5.

[28] *See* FOIA responses from Sheriff and County 9-1-1 center, Exhibit 8.

Plaintiff Chris Peterson has received six citations for panhandling while begging in an Area of Concern.[29] Deputies order him to stop panhandling and move along a couple times per week.[30]

Plaintiff Rodd has not been cited or issued a warning for donating from her car, but risks prosecution every time she exercises her First Amendment right to donate within one of the prohibited Areas. Moreover, plaintiff Rodd's opportunities to exercise her First Amendment right to donate have been restricted by the effect of the Ordinance's restrictions on panhandlers.[31]

Plaintiffs filed suit against the Defendant Commissioners and Defendant Sheriff Forbes, in their official capacities, on December 4, 2024. A motion to certify the plaintiff class was filed on March 19, 2026. *See* ECF # 59. The verified complaint seeks declaratory and relief on behalf of the class declaring the Ordinance unconstitutional under the First Amendment, and an injunction to ban its enforcement. Plaintiff Peterson also asserts an individual damage claim because enforcement of the Ordinance against him violates his constitutional rights.

### III. Legal Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the legal elements of a party's burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A

---

[29] *See* declaration of plaintiff Chris Peterson (Peterson Dec.), Exhibit 9 to this motion

[30] *See* verified complaint, ECF # 1, paragraphs 166-192; Peterson Dec. Exhibit 9.

[31] *See* verified complaint, ECF # 1, paragraphs 193 -219; declaration of Becky Rodd (Rodd Dec.), Exhibit 10. *See also* declaration of Keely Wildman, Exhibit 11.

moving party may show the lack of any genuine dispute of material fact by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 175 (4th Cir. 2024).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A dispute of material fact is "genuine" if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The moving party is entitled to summary judgment if the record would not allow a trier of fact to find for the non-moving party.

A party carrying a legal burden of proof who "fails to make a showing sufficient to establish the existence of an element essential to that party's case" will have summary judgment entered against them. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Addax Energy SA v. M/V Yasa H. Mulla*, 987 F.3d 80, 85 (4th Cir. 2021).

## IV. Plaintiffs Are Entitled to Partial Summary Judgment

A First Amendment challenge to a content neutral law is analyzed through well-established steps. First, the challenger must show that the law burdens speech or expression protected by the First Amendment.[32] If that showing is made, the burden of proof shifts to the government to prove the law imposes (1) reasonable restrictions on the time, place, or manner of protected speech (provided the restrictions are justified without reference to the content of the regulated speech); (2) the restrictions are narrowly tailored to serve a significant and legitimate governmental interest; and (3) that the restrictions leave open ample alternative channels for

---

[32] *See Billups* at 684, citing *Ward v. Rock Against Racism*, 491 U.S. 781 (1989).

speech and/or expression.[33]

## A.    The Ordinance Burdens Protected First Amendment Rights

Plaintiff Chris Peterson has been unable to find work and relies on panhandling from passing motorists to support himself and his disabled wife.[34] The Supreme Court holds "the solicitation of charitable contributions is protected speech."[35] Solicitation in the form of panhandling is protected speech.[36]

Plaintiff Becky Rodd and putative class member Keeley Wildman regularly donate to panhandlers because they are aware of the difficulties faced by the poor and those suffering from substance abuse. They donate to panhandlers from their car windows to express that understanding and their recognition of a social obligation to help others less fortunate.[37] Donating money is a form of free expression protected by the First Amendment, especially when it is an expression of belief or an act of support.[38] Donating in response to a panhandler's solicitation is a communicative and expressive act protected by the First Amendment.

---

[33] *Billups, id.*; *Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015).

[34] *See* Verified Complaint, ECF #1,  paragraphs 166-192; Peterson Dec., Exhibit 9.

[35] *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 789 (1988); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013).

[36] *Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015); *Speet v. Schuette*, 726 F.3d 867, 870 (6th Cir. 2013); *Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999); *Loper v. N.Y.C. Police Dep't,* 999 F.2d 699, 704 (2d Cir. 1993).

[37] *See* Verified Complaint, ECF #1,  paragraphs 193 – 197; Wildman Dec. Exhibit 11.

[38] *See Texas v. Johnson*, 491 U.S. 397, 404 (1989); *United States v. Hamilton*, 699 F.3d 356, 370 (4th Cir. 2012). *McConnell v. FEC*, 540 U.S. 93, 252 (2003).

The Supreme Court and the federal Courts of Appeal have long held that public streets, highways, and roads constitute public fora, traditionally open for free speech and expressive conduct.[39] A government's ability to restrict expressive conduct there is very limited.[40]

The Ordinance enacted and enforced by the defendants applies only to state-controlled public fora in Monongalia County.[41] It defines the roads and highways to which it applies in the designated Areas of Concern to include the entire extent of the road from sidewalk to sidewalk.[42] Within the Areas of Concern, Article V, Sections C – J of the Ordinance prohibits any person from sitting, standing, or otherwise remaining in any part of a road or highway, including medians, neutral grounds, or road shoulders for "any reason apart from lawfully crossing the road or highway." Accordingly, the Ordinance bars all citizens from using any portion of these traditional public fora for *any* First Amendment speech or expressive conduct.

In targeting panhandling specifically, Article V, Section A of the Ordinance prohibits any pedestrian from "interact[ing] with" or "exchang[ing] any item with" an occupant of a vehicle. Similarly, Section B prohibits any occupant of a vehicle from "interact[ing] with" or "exchang[ing] any item with" a pedestrian.

---

[39] *See Frisby v. Schultz*, 487 U.S. 474, 481 (1988) ("all public streets are held in the public trust and are properly considered traditional public fora."); *Reynolds v. Middleton*, 779 F.3d. at 225; *Freedom from Religion Foundation v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020); *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011).

[40] *United States v. Grace*, 461 U.S. 171, 177 (1983); *White Coat Waste Project v. Greater Richmond Transit Co.,* 35 F.4th 179, 196 (4th Cir. 2022).

[41] *See* Areas of Concern, Exhibit 4; Bloom Tr. p.. 203, lns. 1-7.

[42] Ordinance Article III.

The Ordinance facially burdens the exercise of free speech rights by the plaintiffs and others similarly situated in the public fora designated as Areas of Concern. Sections C-J of the Ordinance unconstitutionally purport to legislate away the "public fora" status of the roads, highways, medians, neutral grounds, and road shoulders in the designated Areas by banning virtually any physical presence in those Areas.[43] If one may not be physically present on the roadside or in a median, one is barred from opportunity to communicate any message or viewpoint to passersby.

Moreover, many forms of protected speech or expressive conduct (donation of money, passing literature, honking at friends or in support of a religious or candidate sign, shouting anti-war slogans, etc.) involve interaction with and/or exchanges between pedestrians and vehicle occupants. Sections A – B of the Ordinance especially single out such First Amendment protected acts for criminalization.[44]

The plaintiffs and all others similarly situated have protected rights to panhandle, donate, or otherwise use the public fora designated in the Areas of Concern for the exercise of First Amendment rights. Facially, the Ordinance burdens the exercise of such rights by absolutely prohibiting virtually all physical presence in these areas, and by criminalizing speech or

---

[43] *See United States v. Grace,* 61 U.S. 171, 180 (1983) (government may not turn public sidewalk into non-public forum by legislative *ipse dixit*); *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1230, ftnt. 16 (10th Cir. 2021) (city intent to proscribe pedestrian presence in medians or road shoulders "conflicts with the very notion that these areas. . . by long tradition have been open to public assembly and debate"); *McGraw v. City of Okla. City*, 973 F.3d 1057, 1069 (10th Cir. 2020) (proximity, speed, and volume of passing traffic does not deprive streets or medians of status of public fora.)

[44] *See, e.g.*, Peterson Dec., Exhibit 9 ("I just love talking with people who donated to me, and love to share the energy their kindness and that interaction gives off"); Wildman Dec., Exhibit 11 ("I have spoken with and I have waved to persons standing and walking outside my car on the roadside, median, divider, pedestrian safety zone, crosswalk, and/or roadway.").

expressive conduct between pedestrians and vehicle occupants there. Plaintiffs have proven the Ordinance burdens protected First Amendment rights.

**B.      Defendants Cannot Satisfy Their Burden of Proving the Ordinance a Reasonable Time, Place, and Manner Limitation under Intermediate Scrutiny**

Since plaintiffs have shown the Ordinance burdens protected rights, the summary judgment burden of going forth and the burden of proof shifts to the Defendants to establish that the Ordinance is a reasonable restriction on the time, place, or manner of protected speech. To do so, they must prove (1) Monongalia County has a sufficiently weighty, non-conjectural governmental interest which the Ordinance actually serves; and (2) the Ordinance is narrowly tailored to further that interest while leaving adequate alternative means of  expression available.[45] The Defendants can only meet this burden by producing actual evidence; conjecture and hypotheticals will not satisfy the requirements.[46]

**1. Defendants Cannot Prove the County Has a Non-Speculative, Legitimate Interest the Ordinance Serves**

"For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests."[47] When the government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply "posit the existence of the disease sought to be cured." . . . .It must demonstrate that the recited harms are real, not merely

---

[45] *Sharpe v. Winterville Police Dept.*, 59 F.4th 674, 681 (4th Cir. 2023); *Billups, id.*; *Reynolds v. Middleton*, 779 F. #d. at 227-228.

[46] *Billups v. City of Charleston*, 779 F.3d. at 688, citing *McCullen v. Coakley*, 573 U.S. 464,  496 (2014) and *Reynolds v. Middleton, supra*.

[47] *McCullen v. Coakley*, 573 U.S. 464, 486 (2014 (quotation omitted).

conjectural, and that the regulation will in fact alleviate these harms in a direct and material way."[48]

Defendant Commissioner Bloom testified the revised Ordinance was drafted to promote "safety."[49] When questioned more specifically, Bloom described the precise concern arose from complaints received about individuals standing in concrete medians near stoplights asking motorists for money.[50]  Bloom explained "the key being that we were going after the middle of the road."[51] Bloom insisted at deposition the Ordinance only regulates activities "in the middle of the road."[52]

The Commissioners held the public meeting to receive testimony and evidence relative to the need and scope of the proposed Ordinance on October 11, 2023. Paragraphs 79 – 89 of the verified complaint, ECF #1, alleged that in that hearing, the Commissioners neither received nor requested *any* evidence concerning the reality or extent of actual safety or traffic flow problems caused by panhandling, donating,  or the presence of persons on road shoulders, medians, or in

---

[48] *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664 (1994) (citations omitted); *Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 299 (4th Cir. 2013).

[49] Bloom Tr., p. 113, ln. 23 – p. 114, ln. 9.

[50] Bloom Tr. p. 201, lns. 15 – 22.

[51] Bloom Tr. p. 198, ln. 10 – 18.

[52] Bloom Tr. p. 52, lns. 2-4. *See also* Bloom Tr. p. 64, lns. 11-22:
> Q. So would it be fair to say that that's a prohibition on the person standing on the road or by the road?
> A. No, not by the road. In the middle --
> Q. Okay.
> A. -- of the road . . . We made it very clear on that. . . . The person can stand on the side of the road, can stand on the sidewalk, but they can't stand in the middle of the road.

neutral zones.  Defendants' answer admitted each of these allegations. *See* Answer, ECF #10, paragraphs 85 – 95.  So did Commissioner Bloom's and Sheriff Forbes' deposition testimony.[53]

Moreover, in response to a pre-suit FOIA request for "all writings. . . submitted to or reviewed by the Commission or one or more of its members in considering or determining the need for, the appropriate scope of, and/or substance or terms" of the Ordinance, the Commissioners produced only a 2022 Henrico County, Virginia law and the 2019 MMMPO traffic volume report.[54] In discovery, the three Commissioners and the Sheriff produced no evidence indicating a need for or justifying the scope of the Ordinance other than the MMMPO report, the Henrico County law, and a law review article on the First Amendment to which Bloom referred in his deposition.

The Ordinance criminalizes and forbids *any* physical presence upon road shoulders, medians, or neutral zones of any of the roads or highways in all the designated Areas of Concern. It also expressly forbids First Amendment protected activities of interaction with or passing of items between pedestrians or vehicle occupants in such Area. The Defendant Commissioners did not seek, obtain, or rely on any evidence that panhandling, donating, or other First Amendment activities in the traditional public fora of roads, highways, road shoulders, medians, and neutral grounds within the designated Areas of Concern created a concrete, non-speculative harm, that such harm was greater in those Areas than at other locations in the county, or that the broad prohibitions of the Ordinance are needed to adequately address that harm.

---

[53] Bloom Tr., p. 247 – 252; Forbes Tr. p. 27, ln. 11 – p. 30, ln. 3.

[54] *See* Exhibit 6. Bloom conceded in deposition that the MMMPO report was not reviewed until after the Ordinance had been passed. Bloom Tr. p. 114, lns. 12 – 20. The report includes no data about crashes, road safety problems, or encounters between pedestrians and vehicles. Bloom Tr. p. 247, ln. 13 – p. 250, ln. 11.

Additionally, the Areas of Concern designated by the Commissioners constitute roads, highways, and intersections of state routes.[55] All state roads are under the exclusive jurisdiction of the State's Commissioner of Highways.[56] There are only two exceptions to that exclusive authority. First, counties may continue to supervise and administer construction and maintenance of bridges within municipalities, and of public landings.[57] Second, the Commissioner of Highways has enacted a legislative rule allowing local authorities (including county commissions) to regulate *one* aspect of traffic[58] on state routes:

WVCSR § 157-5-4. Traffic Regulation by Local Authorities

4.1. Procedure for Establishment of Local Traffic Regulations. Whenever local authorities desire to alter a speed zone upon a state highway or extension of a state highway in a municipality, they shall set forth the reasons for the alteration, the speed limits to be observed, and the times the speed limits are effective, and a designation and description of the state highway or extension of the state highway in the municipality to which the speed limit or traffic regulation is to be applicable. The local authority shall send a written request to the Commissioner of Highways, and the speed zone or limit established by local authorities is not effective until approved by the Commissioner of Highways by order entered in his or her Order Book in the same manner as provided in Section 3, of this rule. Appropriate signs giving notice of the speed zone or limit so established shall be erected. Approved signs shall be erected, altered, or removed only by Division forces.

The Ordinance is not a speed regulation, nor does it concern bridges in municipalities or public landings. It purports to regulate pedestrian traffic on state roads (by barring pedestrian use

---

[55] *See* Areas of Concern, Exhibit 5; Bloom Tr. p. 203, lns. 1 – 7: "[t]here are no county roads. . . . .There's only state roads, or city roads, or orphan roads. The county owns no roads."

[56] *See* W, Va. Code §17-4-1.

[57] *See* W. Va. Code § 17-10-1.

[58] The Code defines "traffic" as "pedestrians, ridden or herded animals, vehicles, streetcars, and other conveyances either singly or together while using any highway for purposes of travel." W.Va. Code § 17C-1-50.

of road shoulders, verge, median, and neutral grounds of state roads other than for crossing the road) and to criminalize certain pedestrian and vehicle behaviors near or on those roads. Monongalia County and the Defendant Commissioners lack authority to regulate the public's use of state roads. *See City of Morgantown v. Nuzum Trucking Co.*, 237 W. Va. 226 (2016) (except for regulating speed limits.in accord with legislative rule, local authorities had no power to regulate traffic on any part of the state road system). Defendant Commissioner Bloom, the author of the Ordinance, concedes that point.[59]

Consequently, the Defendants cannot prove the Ordinance addresses a non-speculative, concrete, legitimate county interest in regulating pedestrian use of road shoulders, medians, or neutral zones on state roads, or communications between persons using those roads. Any interest in regulating free speech activities on state roads is exclusive to the West Virginia Commissioner of Highways.

For all these reasons, Defendants cannot prove the Ordinance serves a non-speculative, legitimate "safety" interest of Monongalia County. The Ordinance fails the first step in the intermediate scrutiny analysis.

## 2.    Defendants Cannot Prove the Ordinance Is Narrowly Tailored

Intermediate scrutiny requires the government to present evidence that a restriction on free speech is narrowly tailored; arguments unsupported by evidence will not suffice to carry that burden. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.[60] Narrow tailoring also requires

---

[59] Bloom Tr. p. 229, ln. 23 – p. 230, ln. 5; p. 234, lns. 6 -12 ( "we don't control the roads. We don't have roads." ); p. 252, lns. 8 – 16.

[60] *Ward*, 491 U.S. at 799.

evidence the government actually tried less burdensome ways to resolve the professed problem without success.[61]

The Ordinance is not narrowly tailored to avoid burdening more First Amendment rights than necessary. Keeping people out of "the middle of the road" does not require an absolute bar against using **any** part of a road or highway, including medians, neutral grounds, shoulders, or crosswalks, for reasons other than lawfully crossing the road. Persons standing, sitting, or otherwise remaining on the shoulder, median, or neutral zone of a road or highway are *not* "in the middle of the road." Barring the physical presence or use of these public fora for any First Amendment activity is a burden on free speech that only minimally serves the professed purpose of keeping people out of the middle of the road; overwhelmingly, the Ordinance's burdens fall on  protected speech.[62]

Secondly, the Commission did not consider alternatives to the Ordinance less burdensome on free speech rights.[63] Defendants have no evidence that the county actually tried alternatives less burdensome than the Ordinance without success before enacting the current law.

Defendants agree the Ordinance is not actually needed to allow law enforcement to act when people are found in the middle of the road. Both the author of the Ordinance and the Sheriff agree deputies have, and routinely exercise, authority to require persons found in the

---

[61] *McCullen*, 573 U.S. at 494-496; *Billups*, 961 F. 3d. at 687 – 688 (government must present evidence showing it seriously undertook to address the problem with less intrusive tools readily available before enacting restrictive law).

[62] *People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fedn., Inc.*,  60 F.4th 815, 833 (4th Cir. 2023) (law failed intermediate scrutiny since its restrictions do not fit the professed purpose it was supposed to serve).

[63] Bloom Tr. p. 229, ln. 3 – p. 231, ln. 3; Answer, ECF #10, .paragraphs 97-98, admitting verified complaint allegations 91-92.

middle of the road to move to the side, before the Ordinance was passed and in areas it does not cover.[64] Defendants have no evidence this less burdensome way of dealing with pedestrians in the middle of the road has been seriously employed but proven unsuccessful.

Thirdly, Defendants cannot prove the Ordinance leaves adequate alternative opportunities for the free exercise of First Amendment rights on road shoulders, medians and neutral zones within the designated Areas of Concern. The Ordinance bans all physical presence in these public fora except when crossing the road. It especially prohibits interactions and expressive acts necessary to engage in the First Amendment-protected acts of panhandling and donating. These prescriptions deny the citizenry *any* alternative avenue for exercising free speech rights in the traditional public fora of roads and highways in these designated Areas. The Ordinance fails to allow any alternative avenue for First Amendment activities in these Areas, which were selected in part because of the high daily number of passing motorists to whom First Amendment-protected communications and expressive conduct could be directed.[65]

For all these reasons, the Ordinance fails the "narrowly tailored" standard of intermediate scrutiny.

## V.    Conclusion

Defendants cannot carry their evidential burden of proving Monongalia County Ordinance 2023-1 is justified under intermediate scrutiny as a reasonable time, place, and manner limitation on the constitutional rights of the named plaintiffs and the absent members of

---

[64] Bloom Tr., p. 59, ln. 4 – p. 60, ln. 10;  Forbes Tr. p. 77, ln. 12 – p. 79, ln. 4.

[65] *See, e.g., McCraw v. City of Okla. City*, 973 F.3d 1057, 1078-1080 (10th Cir. 2020) (law restricting pedestrian presence on medians did not provide adequate alternatives for charitable solicitors, political campaigners, protestors, or panhandlers who seek to engage with passing cars).

the plaintiff class. Plaintiffs therefore ask for entry of summary judgment for the following relief against the Defendants:

1.  entry of a class-wide judgment declaring Ordinance 2023-1 unconstitutional;

2.  entry of a class-wide judgment enjoining Defendants or any person acting on their behalf from formal, informal, or other enforcement of Ordinance 2023-1, including from continuing any pending, not yet-completed prosecutions under the Ordinance;

3.  entry of an order finding Defendants liable to plaintiff Chris Peterson under 42 U.S.C. § 1983 for violation of his First Amendment rights, such that trial on his individual claim shall be limited to the amount of damages he is entitled to recover;

4.  entry of an order finding Defendants liable under 42 U.S.C. § 1988 for costs and attorney fees, the amount to be determined at trial.

Respectfully submitted,

**CHRIS PETERSON and BECKY RODD, on their behalf and on behalf of and all other similarly situated,**
**By Counsel,**


/s/ _Gary M. Smith_____
Gary M. Smith   (WV Bar # 12602)
(gary@msjlaw.org)
Lydia C. Milnes (WV Bar # 10598)
(lydia@msjlaw.org)
MOUNTAIN STATE JUSTICE, INC.
1029 University Dr., Suite 101
Morgantown, WV  26505
T:  (304) 326-0188
*Counsel for Plaintiffs*